UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA   03 - 80 86

CASE NO:

MARK HOWARD SHULMAN,

     Plaintiff,

v.

MERYL HOPE PERLMAN a/k/a MERYL HOPE
SHULMAN and MICHELLE DEBORAH PERLMAN

     Defendants.

_____/

## COMPLAINT

Plaintiff MARK HOWARD SHULMAN (hereinafter "SHULMAN") by and through his undersigned counsel files this Complaint with this Honorable Court against the Defendants MERYL HOPE PERLMAN and MICHELLE DEBORAH PERLMAN (hereinafter "MERYL PERLMAN" and "MICHELLE PERLMAN", respectively) and in support thereof states the following:

**PARTIES**

1. Plaintiff SHULMAN is a citizen of Canada, permanent resident of the United States and a resident of Boca Raton, Florida.

2. Defendant MERYL PERLMAN is a United States citizen and resident of Florida.

3. Defendant MICHELLE PERLMAN is a United States citizen and resident of New York State.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to the



1

provisions of the Racketeer Influenced and Corrupt Organization Act, (hereinafter "RICO"), 18 U.S.C.A. §§ 1961, 1962, and 1964. The amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. Moreover, this action includes Florida state law predicated on Florida Statute, Chapter 772 (Civil Remedies for Criminal Practices Act."), civil liability for conspiracy to defraud and intentional infliction of emotional harm. Said Florida state law claims arise out of the same operative facts, which serve as basis for the federal claim against the Defendants.

5.   This Court has personal jurisdiction on the basis of diversity of citizenship and a statutory basis for personal jurisdiction under the Racketeer Influenced and Corrupt Organization Act in that the federal statute provides for nationwide service of process. See *Johns v. Taramita*, 132 F.Supp.2d 1021 (S.D. Fla. 2001).

6.   Venue is proper, as to all claims asserted herein, in the United States Southern District of Florida as this district has the most significant ties to the claims asserted herein. Specifically, the plaintiff and the witnesses are located in south Florida, the access to the source of proof is in Florida, Defendants activities in this state have been substantial and continuous and the wrongdoings occurred in Florida. Additionally, Defendant MERYL PERLMAN has been engaged in civil proceedings in Palm Beach County's Circuit Court through December 12, 2002 and is a resident of Florida.

7.   Defendant MICHELLE PERLMAN by virtue of opening and maintaining financial accounts in south Florida (including but not limited to Prudential and First Union investment accounts) purposely availed herself of the privilege of conducting activities in south Florida. Moreover, the claims alleged in this complaint arise out of or results from Defendants south Florida related activities.

2

8.   The location of events giving rise to the claims in this complaint is within the jurisdiction of this Court as the accounts and transfers described in this Complaint were located in Florida.

## ALLEGATIONS AS TO ALL COUNTS
## STATEMENT OF FACTS

9.      Plaintiff SHULMAN is the former spouse of Defendant MERYL PERLMAN. The Plaintiff filed a petition for dissolution of marriage December 1, 1999 and the trial occurred over a period of six days (November 14, 15,17, 28, 29, 2000 and January 17, 2001). The Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida entered final judgment of dissolution of marriage on December 12, 2001. (See Exhibit A, which is a copy of the Final Judgment of Dissolution of Marriage, dated December 12, 2001 and is incorporated herein by reference).

10. Said final judgment required MERYL PERLMAN to transfer marital assets to Plaintiff SHULMAN in the amount of $246,957 with interest at the rate of 11% a year. (See Exhibit A, page 16 which is attached hereto and incorporated herein by reference).

11. At all times material, Defendant MERYL PERLMAN, transferred marital assets to her sister Defendant MICHELLE PERLMAN as part of a calculated plan to defraud Plaintiff SHULMAN of his property.

12. Defendant MERYL PERLMAN held investment accounts with Prudential and First Union located in Florida containing marital assets in excess of $302,000 with co-conspirator Defendant MICHELLE PERLMAN.  (See Exhibit A at page 3). Defendants conspired to transfer marital assets from said Prudential account numerous times in an effort to abscond money lawfully belonging to the Plaintiff.  In fact, at least 12 different transfers of funds from the marital Prudential account to a joint account held by both Defendants exceeded $301,750.00.

3

See composite Exhibit B which comprises copies of twelve (12) checks signed by Defendant MERYL PERLMAN on Prudential joint accounts with her co-conspirator Defendant MICHELLE PERLMAN transferring marital assets to various other joint accounts held by the Defendants.

13. Additionally, Defendant MERYL PERLMAN transferred assets belonging to the Plaintiff which were maintained in the marital First Union account to a joint account with her co-conspirator Defendant MICHELLE PERLMAN in at least two separate instances. See Composite Exhibit C comprising of two checks totaling approximately $35,000 and is incorporated herein by reference.

14. Defendant MICHELLE PERLMAN aided and abetted Defendant MERYL PERLMAN by using income received from their racketeering activity in acquisition of interest in and/or in operation of a RICO enterprise. Both defendants are enjoying investments of proceeds derived from their RICO enterprise.

15. By virtue of Defendant MERYL PERLMAN's history of commingling marital funds with family members, the Circuit Court judge found that "the wife has dissipated marital assets by removing $65,182.00 from marital accounts and scattering same into various accounts held by her and her family". (See Exhibit A at page 5- Final Judgment dated December 12, 2001) In addition to and independent of the Circuit Court findings, the evidence incorporated in the instant action (as Composite Exhibits B & C) demonstrate that the Defendants committed at least fourteen (14) predicate acts clearly forming a pattern of conduct in furtherance of a single objective (to defraud the Plaintiff). Moreover, the acts alleged herein raise an inference of mutual understanding between the Defendants as to the RICO conspiracy.

16. Defendant MICHELLE PERLMAN was aware of the essential goal and/or overall

4

objective of the conspiracy which was to defraud Plaintiff SHULMAN of over $246,957.00 by the transfer of marital assets to joint accounts held by the Defendants depriving him of his property. In summary, Defendants' numerous transfers are ample evidence that Defendants were aware that they were conducting affairs of enterprise through a pattern of racketeering.

## COUNT I
## RICO VIOLATION

17. The Plaintiff states and re-incorporates by reference paragraphs 1 through 16 of this Complaint in support of Count I and in addition states the following:

18. Defendant MICHELLE PERLMAN agreed to commit at least fourteen (14) predicate acts to carry out the essential nature of the plan to commit fraud against the Plaintiff. Plaintiff was damaged directly by the conspiracy to violate RICO in that he has been denied his property by the unlawful activity of the Defendant MICHELLE PERLMAN and, as such, Plaintiff is entitled to damages including treble damages under the law against said Defendants.

19. Defendant MERYL PERLMAN agreed to commit at least fourteen (14) predicate acts to carry out the essential nature of the plan to commit fraud against the Plaintiff. Plaintiff was damaged directly by the conspiracy to violate RICO in that he has been denied his property by the unlawful activity of the Defendant MERYL PERLMAN and, as such, Plaintiff is entitled to damages including treble damages under the law against said Defendant.

**WHEREFORE** Plaintiff MARK SHULMAN respectfully prays that this court enter judgment against Defendant MICHELLE PERLMAN and Defendant MERYL PERLMAN, jointly and severally liable in the amount of $246,957.00 together with interest, attorneys' fees, costs and any other relief this Honorable Court deems appropriate. Additionally, Plaintiff respectfully requests that this Court award him treble damages in connection with the violation of the federal statute.

## COUNT II
## STATE LAW CLAIM PURSUANT TO THE CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT

20. The Plaintiff states and re-incorporates by reference paragraphs 1 through 16 of this Complaint in support of Count II and in addition states the following:

21. Defendants violated Florida Statute, Chapter 772 (Civil Remedies for Criminal Practices Act.") by engaging in prohibited activities including with criminal intent receiving proceeds derived, directly or indirectly, from a pattern of criminal activity.

22. Plaintiff is entitled to recover his assets which were unlawfully converted by the Defendants.

23. Plaintiff has been injured by reason of the Defendants' violation of Florida Statute, Chapter 772.103 and he is therefore entitled to threefold the actual damages sustained, attorneys' fees and court costs in the trial and appellate courts.

**WHEREFORE** Plaintiff MARK SHULMAN respectfully prays that this court enter judgment against Defendant MICHELLE PERLMAN and Defendant MERYL PERLMAN, jointly and severally liable in the amount of $246,957.00 together with interest, attorneys' fees, costs and any other relief this Honorable Court deems appropriate. Additionally, Plaintiff respectfully requests that this Court award him treble damages under Florida law.

## COUNT III
## CONSPIRACY TO DEFRAUD
## (STATE LAW CLAIM)

24. The Plaintiff states and re-incorporates by reference paragraphs 1 through 16 of this complaint in support of Count III and in addition states the following:

25. Defendants conspired to convert assets in the amount of $246,957.00 to themselves to the detriment of the Plaintiff. Defendants' overt, tortuous and unlawful acts committed in furtherance of the conspiracy is comprised of numerous transfers of funds to which Plaintiff was lawfully entitled to in furtherance of the conspiracy to defraud the Plaintiff.

26. Plaintiff actually suffered damages as a direct result of the Defendants' conspiracy in the amount of $246,957.00.

27. Defendants conduct was outrageous, motivated by malice, indicative of moral turpitude, as well as showing wanton disregard for the law. As such, Plaintiff is entitled to punitive damages to be determined by the trier of fact.

**WHEREFORE** Plaintiff MARK SHULMAN respectfully prays that this Honorable Court enters judgment against Defendant MICHELLE PERLMAN and Defendant MERYL PERLMAN, jointly and severally liable in the amount of $246,957.00 together with interest, punitive damages, attorneys' fees, costs and any other relief this Honorable Court deems appropriate.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL HARM
## (STATE LAW CLAIM)

28. The Plaintiff states and re-incorporates by reference paragraphs 1 through 16 of this Complaint in support of Count III and in addition states the following:

29. Defendants' reprehensible conduct is indicative of their malice, intentional wantonness, and of an exaggerated reckless nature and they are jointly and severally liable for such conduct. Any reasonable person would believe that severe infliction of emotional harm to the Plaintiff was

substantially certain to follow by the extreme and outrageous conduct and actions carried out by the Defendants as described in this Complaint.

30. There is ample evidence to support a finding in this action that the Plaintiff sustained substantial and severe emotional injury and judgment should be entered against each Defendant jointly and severally for damages.

**WHEREFORE** Plaintiff MARK SHULMAN respectfully prays that this Honorable Court enter judgment against Defendants MICHELLE PERLMAN and Defendant MERYL PERLMAN, jointly and severally liable in the amount of $246,957.00 together with interest, attorneys' fees, costs and any other relief this Honorable Court deems appropriate.

Respectfully submitted by

CRAIG A. BOUDREAU
Attorney for Plaintiff
2315 S. Congress Avenue
West Palm Beach, Florida 33406
Tel. (561) 641-5722
Fax (561) 969-1200

Craig A. Boudreau
Fla. Bar No. 471437

IN THE CIRCUIT COURT OF FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
FAMILY DIVISION

MARK SHULMAN,
     Petitioner/Husband,

                      CASE NO.  CD 99-9527 FY

and

MERYL SHULMAN,
     Respondent/Wife.
_____/

## FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE
## CONTAINING MONEY JUDGMENT

    This cause came before this Court for a trial on a Petition for Dissolution of

Marriage. The trial occurred over six days held on November 14, 15, 17, 28, 29, 2000

and January 17, 2001.  The Court has reviewed the file, received numerous exhibits

into evidence, and heard the testimony of the parties and numerous lay and expert

witnesses. The court makes the following findings of fact and conclusions of law:

    1.  Both parties have been residents of the State of Florida for more than six

months immediately before filing the petition for dissolution of marriage.

    2.  The marriage between the parties is irretrievably broken.

    3.  Marital Assets and Liabilities.

    a.    Date of Valuation of Property. The assets and liabilities listed below are

        divided as indicated.  The date of valuation of these assets and liabilities

        is, unless otherwise indicated, the date of filing petition for dissolution of

        marriage; to wit: December 1, 1999.

    b.    Division of Assets.  The assets listed below are nonmarital assets. Each

        party shall keep, as his or her own, the assets found to be nonmarital,

        and the other party shall have no further rights or responsibilities

1

Exhibit "A"

CD 99-9527 FY

regarding these assets.

| DESCRIPTION | Current Fair Market Value | Wife's Nonmarital property | Husband's Nonmarital property |
|---|---|---|---|
| First Union ending 2805 | $1,039.00 | $1,039.00 | |
| First Union ending 1102 | $11,267.00 | $11,267.00 | |
| Royal Bank of Canada | $142.00 | $142.00 | |
| NationsBank ending 5633 | $3,595.00 | $3,595.00 | |
| NationsBank ending 0266 | $2,996.00 | $2,996.00 | |
| Savings of America ending 1985-0 | $2,954.00 | $2,954.00 | |
| Savings of America ending 9762-5 | $16,737.00 | $16,737.00 | |
| Savings of America ending 8340-0 | $7,828.00 | $7,828.00 | |
| Savings of America ending 2085-6 | $12,634.00 | $12,634.00 | |
| Washington Mutual | $1.00 | | $1.00 |
| SouthTrust Bank | $11,971.00 | $11,971.00 | |
| Neuberger Berman | $69,653.00 | $69,653.00 | |
| TD Waterhouse | $21,457.00 | | $21,457.00 |
| Crestmont Federal Savings | $1,056.00 | $1,056.00 | |
| CIBC RRSP | $3,717.00 | | $3,717.00 |
| InvestorLine IRA | $2,850.00 | | $2,850.00 |
| Merrill Lynch IRA | $10,879.00 | | $10,879.00 |
| InvestaCorp | $890,007.00 | $890,007.00 | |
| InvestaCorp | $173,756.00 | $173,756.00 | |
| Prudential Securities ending 728 AG | $184,273.00 | $184,273.00 | |
| Sentinel Funds | $66,899.00 | $66,899.00 | |
| Franklin Federal Tax Free | $34,810.00 | $34,810.00 | |
| Antiques, Painting, Persian Carpets | $10,000.00 | $10,000.00 | |
| Antiques, Painting, Persian Carpets | $7,000.00 | | $7,000.00 |
| **TOTAL NONMARITAL ASSETS:** | $1,547,521.00 | $1,501,617.00 | $45,904.00 |

c.      The assets listed below are marital assets. Each party shall keep, as his

or her own, the assets awarded in this section, and the other party shall

2

CD 99-9527 FY

have no further rights or responsibilities regarding these assets. Any personal item(s) not listed below are awarded to the party currently in possession or control of the item(s).

| DESCRIPTION | Current Fair Market Value | Wife shall receive | Husband's shall receive |
|---|---|---|---|
| Colonial Bank | $1,110.00 | | $1,110.00 |
| First Union CAP Account | $12,115.00 | $12,115.00 | |
| IRS Refund | $6,300.00 | $6,300.00 | |
| Manulife Financial | $5,391.00 | $5,391.00 | |
| CIBC RRSP ending 629 | $24,705.00 | $24,705.00 | |
| CIBC RRSP ending 522 | $2,229.00 | $2,229.00 | |
| CIBC Pension | $9,460.00 | | $9,460.00 |
| Montreal Trust | $2,930.00 | $2,930.00 | |
| Merrill Lynch IRA | $2,175.00 | | $2,175.00 |
| Fidelity Investments | $23,275.00 | $23,275.00 | |
| Prudential Securities ending 744 | $291,226.00 | $291,226.00 | |
| AG CIBC Stock | $4,000.00 | $4,000.00 | |
| 1998 Grand Marquis auto | $24,000.00 | $24,000.00 | |
| 1998 Ford Escort auto | $10,000.00 | | $10,000.00 |
| Employee Stock Options | $26,900.00 | | $26,900.00 |
| Antiques, Painting, Persian Carpets and watches | $4,000.00 | $4,000.00 | |
| Furnishings in marital residence | $25,000.00 | $25,000.00 | |
| Jewelry | $5,000.00 | $2,500.00 | $2,500.00 |
| **TOTAL MARITAL ASSETS:** | $479,816.00 | $427,671.00 | $52,145.00 |

d.  <u>Division of Liabilities/Debts.</u>  The liabilities listed below are nonmarital liabilities and, therefore, are owed as indicated. Each party shall owe, as his or her own, the liabilities found to be nonmarital, and the other party shall have no responsibilities regarding these debts.

3

CD 99-9527 FY

| DESCRIPTION | Current Amount Owed | Wife's Nonmarital liability | Husband's Nonmarital liability |
|---|---|---|---|
| Market Place Bank Line of Credit | $9,029.00 | | $9,029.00 |
| **TOTAL NONMARITAL LIABILITY:** | $9,029.00 | $0.00 | $9,029.00 |

e.   The liabilities listed below are marital liabilities and are divided as indicated. Each party shall hold the other party harmless and pay, as his or her own, the marital liabilities awarded below.

| DESCRIPTION | Current Amount Owed | Wife shall pay | Husband shall pay |
|---|---|---|---|
| 1999 Tax liability | $3,613.00 | | $3,613.00 |
| Canadian taxes | $1,840.00 | | $1,840.00 |
| CIBC line of credit | $12,082.00 | | $12,082.00 |
| Auto loan | $5,400.00 | | $5,400.00 |
| GM credit card | $1,967.00 | | $1,967.00 |
| **TOTAL MARITAL LIABILITY:** | $24,902.00 | $0.00 | $24,902.00 |

4.   There are no contingent assets and liabilities to be divided.

5.   <u>Cash to Equalize</u>.  Based on the above distributions, the marital assets and liabilities are divided with an overall result as follows:

| DESCRIPTION | Fair Market Value | Wife shall receive | Husband's shall receive |
|---|---|---|---|
| MARITAL ASSETS | $479,816.00 | $427,671.00 | $52,145.00 |
| MARITAL LIABILITIES | $24,902.00 | $0.00 | $24,902.00 |
| TOTALS: | $454,914.00 | $427,671.00 | $27,243.00 |
| CASH TO EQUALIZE: | | | $200,214.00 |

The court finds that to equalize the distribution the wife shall pay to the

4

CD 99-9527 FY

husband the sum of $200,214.00.

6. <u>Commingling</u>. The court finds that the wife has dissipated marital assets by removing $65,182.00 from marital accounts and scattering same into various accounts held by her and her family. The court heard credible testimony and received into evidence exhibits documenting the transfer of funds into her nonmarital accounts. The husband's forensic accountant Bruce Berger's analysis provides a simple method of doing equity without declaring other accounts marital and dividing same which, based on the evidence presented would provide a windfall to the husband. In addition, the wife has received and removed into either her nonmarital accounts or accounts held by her family, interest from the certificates of deposit purchased from sale of the parties' home in Canada totaling $28,303.00 ($37,529.00 in interest less $9,226.00 which remains in the account). Thus, the total amount due for commingled assets and interest is $46,743.00 which equals $65,182.00 + $28,303.00 divided by two.

Therefore, the wife shall also pay to the husband the sum of $46,743.00. This amount is in addition to the $200,214.00 which is ordered above. In addition, the wife shall immediately transfer the $750,000 life insurance policy which she has taken out on the husband's life to the husband. Henceforth, the husband shall be responsible for making all premium payments on this policy. Also, the wife shall return the Husband's Canadian art work and his antique watch collection within ten (10) days or pay him an additional $7,000.00. The Wife shall also return to the Husband all of his documents and possessions and provide him with all of the children's toys and clothing, immediately.

5

## Custody of and visitation with minor children

7. <u>Jurisdiction</u>. The Court has jurisdiction to determine custody of and visitation with the parties' minor children listed in the next paragraph below.

8. The parties' minor children are:

Brandon Shulman, date of birth September 25, 1991

Jennifer Shulman, date of birth August 10, 1998.

9. <u>Parental Responsibility for the Minor Children</u>. The husband shall have sole parental responsibility for the parties' minor children. Shared parental responsibility would be detrimental to the children at this time because the overwhelming evidence from numerous expert and lay witnesses demonstrates the following:

a. The wife has engaged in a pattern of conduct which interferes with the social and educational advancement of the parties' minor children. The wife has moved Brandon from several schools. She is involved in frequent confrontations with teachers and school administrators. She refuses to address problems which Brandon has in school, usually blaming them upon teachers and administrators. She has been unable to insure that Brandon arrives at school on time. This court finds that the wife's conduct has directly resulted in Brandon's plummeting school record, both academically and socially.

b. The far greater weight of the evidence supports the conclusion that the wife has exaggerated and unfounded fears of medical conditions such as allergies, asthma and other illnesses. Consequently, she has limited her children from being able to engage in normal activities which would foster their psychological and educational development. As one example, the custody evaluator reported that the

6

CD 99-9527 FY

wife will not permit Brandon to attend movies because of her unsupported fear that it will endanger his eyesight.

c. The court finds wholly credible the testimony of the court appointed psychologist, Dr. Phillip Heller, and the court appointed custody evaluator, Nicole Saunders. Dr. Heller testified that the wife has a narcissistic personality disorder with histrionic and compulsive traits. Consequently, the wife is incapable of understanding or considering the viewpoints of anyone other than herself. This has led to her consistent conflict with neighbors, teachers, law enforcement officers, court appointed personnel that appear to have an opinion different from hers, and Mr. Shulman. Both Dr. Heller and the other court appointed psychologist, Dr. Carol Hillman, demonstrated that Mrs. Shulman does not take joy from her children's accomplishments. She regards her children as an extension of her narcissism. Dr. Heller testified that the wife's personality disorder is unlikely to change, even if she attempts therapy. She will continue to create conflicts in almost every area involving the children.

d. The wife has falsely accused numerous persons including a neighbor, the husband, and a five-year-old playmate of her daughter's of abuse or sexual misconduct. Thus, the wife has demonstrated that her exaggerated and often irrational fears prevent her from being able to made decisions in a manner which would not be detrimental to the best interests of the minor children.

e. The wife has demonstrated a continuous unwillingness to share decision making responsibility with the husband. The overwhelming evidence demonstrated that wife is unwilling and/or unable to confer with the husband on

7

CD 99-9527 FY

major decisions affecting the welfare of the children. To the contrary, she has demonstrated a disregard for discussing such matters with him, to the point of even refusing to tell him when Brandon is removed from school or in what school he will next be enrolled. The wife has also demonstrated an unwillingness and/or inability to respect orders from the court or the advice of trained professionals.

The court has also carefully considered the statutory factors provided in section 61.13(3), Florida Statutes as follows:

(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.

The overwhelming evidence supports the finding that the husband is by far more likely to allow frequent and continuing contact with the wife. The evidence demonstrated that the wife refused visitation to the husband for months during the early stages of this litigation, continued to obstruct visitation after an order was in place, and appears unable and unwilling to comply with the court's orders regarding visitation. The wife has made false allegations regarding the husband to frustrate visitation. The wife was arrested, although no subsequent formal charges were filed, for interference with custody by the Highland Beach Police Department. Sgt. Reiger of the Highland Beach Police Department presented credible testimony that Mrs. Shulman "mocked" the court order regarding visitation. The wife also violated visitation arrangements agreed to between her various lawyers and the husband's lawyer.

(b) The love, affection, and other emotional ties existing between the parents and the child.

8

CD 99-9527 FY

The court finds that the husband has a strong bond with the children.  As to the wife the court fully accepts the testimony of Dr. Heller that the wife is a narcissist that "cannot have a deep love" for her children.  Dr. Heller testified that the children are an extension of the narcissism in that she believes "my child is the best whatever."  The court also accepts Dr. Hillman's conclusion that the children are a source of stress to Mrs. Shulman and that she takes no joy in them.

(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

Both parties have sufficient financial resources for the minor children.  The wife lacks the disposition to provide "food, clothing, medical care or other remedial care" as she has restricted the children's diets claiming food allergies[1], overdresses Brandon for school (hat, heavy jacket, long pants in September attending school in Boca Raton), and exhibits an excessive and irrational fear of germs.

(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

Based on the court's findings all of the other factors, the children have not lived in a stable, satisfactory environment with the wife and there is no desirability to maintaining continuity.  Brandon's school record alone demonstrates the unsatisfactory environment.  Other facts that support this conclusion is the wife's

---

[1]The wife first claimed Brandon suffered from food allergies in her verified counter petition and later fought the appointment by the court of an allergist to verify her claims.  No food allergies were found and the wife refused to allow blood work for more detailed results.

9

CD 99-9527 FY

conflicts with school officials police, and neighbors, and compulsive behavior (germs, allergies, and overdressing). Sgt. Rieger testified that the house was in shambles, and the children were not properly cared for. The court can conclude that remaining in the wife's home is detrimental to the children. It is likely to result in continued poor school performance, an inability to form and maintain friendships with peers and engage in normal childhood activities.

(e) The permanence, as a family unit, of the existing or proposed custodial home.

The parties separated in October 1999. Both maintain separate residences. The husband can provide a stable and permanent family unit. He has arranged for time off from work to aid the transition of the children to his home. Mr. Shulman has demonstrated far greater stability and maturity which makes his proposed custodial home a more permanent choice. Mr. Shulman's employer is willing to accommodate his schedule as custodial parent. Mr. Shulman has rejected promotions which would interfere with his ability to care for the children.

(f) The moral fitness of the parents.

The court finds that the wife is not morally fit. The wife has demonstrated a willingness to solicit and suborn perjury. The custody evaluation demonstrates that the wife perjured herself during an administrative hearing attempting to get Brandon into the gifted program. The Wife encourages the children to believe that problems experienced are always the fault of others. She has no compulsions against denigrating the Husband in front of the children, describing him as violent, or unwilling to support them. The wife encouraged a witness, former housekeeper

10

CD 99-9527 FY

Margaret Sylvester, to commit perjury in this case. The wife's testimony at trial was not credible. The wife testified contrary to almost every other witness. In addition, there is credible testimony that the wife threatened the husband, a Canadian national, with arrest and deportation to control him during the final year of the marriage. In contrast, the testimony of all neutral corroborating witnesses, demonstrates that the Husband is morally fit.

(g) The mental and physical health of the parents.

The testimony of Dr. Heller as outlined, *supra*, demonstrates severe mental health issues which Mrs. Shulman has done nothing to confront or treat. The testimony of Dr. Heller, Nicole Saunders, and Susan Jacobson demonstrate that the husband has overcome possible prior difficulties in handling his anger during very trying situations created by the wife. Unlike the wife, Mr. Shulman sought counseling and by all accounts is an emotionally stable individual. Neither party presents any issues of physical health which would affect custody.

(h) The home, school, and community record of the child.

This factor is most distressing to the court. Since the parties have separated, Brandon's school record has plummeted with excessive tardiness, absences, and poor grades. Rather than address problems, Mrs. Shulman's response is to accuse teachers and staff of dereliction. There are also growing concerns about Brandon's behavior at school. This deterioration has occurred under the wife's primary care. The court does not accept Mrs. Shulman's rationales that the schools have exaggerated the problem or that it was a temporary reaction to the "stress" of the divorce proceedings. The court finds that this factor also favors the husband who has

11

CD 99-9527 FY

demonstrated an ability to work with teachers and therapists to provide help to his children.

(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

The children are too young for the court to afford great weight to this factor. However, the court notes that one of the court-appointed psychologists, Dr. Hillman, noted that Brandon Shulman expressed the preference that he and his sister would be best served by living with their father since he provides the best opportunity for them to have a normal life.

(j) The willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

See factor (a) above.

(k) Evidence that any party has knowingly provided false information to the court regarding a domestic violence proceeding pursuant to s. 741.30.

There is evidence to strongly suggest that Mrs. Shulman has attempted to falsely accuse Mr. Shulman of violence against her and the minor children. She has solicited third parties in an effort to provide false testimony as to this.

(l) Evidence of domestic violence or child abuse.

Despite Mrs. Shulman's claims, there is no credible evidence of this factor. However, the court does find credible, Mr. Shulman's testimony that he has been a victim of domestic violence.

(m) Any other fact considered by the court to be relevant.

Mrs. Shulman's total inability to work with others, when it comes to matters

12

CD 99-9527 FY

involving her children and her belief that all problems experienced by the children must always be the fault of persons other than herself or the children, combined with her inability to perceive the effects or consequences of her behavior renders it detrimental to the best interests of the children for her to exercise parental responsibility.

10.   Secondary Residential Responsibility, Visitation, or Time Sharing with Minor Children. The wife shall have **supervised visitation** once per week with the minor children, such supervision to be conducted by the Family Connection at the Palm Beach County Courthouse at 205 North Dixie Highway, West Palm Beach, Florida 33401. In the alternative, if available, wife may exercise her weekly visitation at the Children's Place in Boca Raton, Florida, which is run by the Florida Department of Children and Family Services. Supervised visitation is in the best interests of the minor children, at this time, because of the wife's failure to comprehend how her actions, fears, and confrontations with third parties impact upon the children detrimentally. Also the court finds that Mrs. Shulman is not able to work with others or comply with court orders. Her continuing efforts to undermine the relationship between the husband and the children will continue if given unsupervised visitation.   In addition, the court is concerned that wife would attempt to flee if presently permitted to be with the children in an unsupervised setting.

11.   The court denies the wife's request for alimony.

12.   Reasons for denying alimony. The Court has considered all of the following in awarding/denying alimony:

a. The standard of living established during the marriage;

13

CD 99-9527 FY

b. The duration of the marriage;

c. The age and the physical and emotional condition of each party;

d. The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each;

e. The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party; and

f. All sources of income available to either party.

In reviewing these factors, the Court finds that the evidence has demonstrated that the wife has far superior resources to the husband. From her financial affidavits, it has been demonstrated that the wife has demonstrated the ability to support herself and even substantially increase her assets, despite not being employed and having received no temporary alimony from the husband. At trial, the wife presented no plan nor evidence to demonstrate a need for rehabilitative or permanent alimony. The wife has refused to look for employment, despite the introduction of uncontradicted evidence that she is wholly capable of finding employment in her previous profession of teaching and that the income earned from such a position, in addition to income from her substantial investments, is sufficient for the wife to meet her support needs. Contrary to the wife's claims at trial, the credible evidence indicates that she did not contribute to the furtherance of the husband's career.

13. The Court finds that there is a need for child support and that the wife has the present ability to pay child support. The Court makes the following findings: The wife claims a present net income of approximately $25,000 per year. Considering the

14

CD 99-9527 FY

value of her investments, this amount is exceedingly conservative. The uncontradicted testimony of Vocational Rehabilitation Expert Richard Celestino, conclusively demonstrated that the wife is capable of earning $32,000 to $35,000 per year, should she choose to resume her profession in teaching. Applying the child support guidelines, section 61.30 Florida Statutes, to a total minimum earned and imputed income of $58,000 per annum, the Court finds that the wife should pay child support to the husband of $893.00 per month. The wife's net with combined actual and imputed monthly income is $3,521.00, (Child Support Guidelines 28.72%). The Father's net monthly income is $8,740.00, (Child Support Guidelines 71.28%). Monthly child care costs are $867.00. Monthly health/dental insurance costs are $60.00. The Guidelines are not exceeded when the reasonable income which can be imputed to the wife is factored in. See Shrove v. Shrove 724 So. 2d. 679 (Fla. 4th DCA 1999).

14. Attorney's fees and costs. The wife's request for attorney fees, costs, and suit money is denied because the wife has far superior assets to the husband. Also, the wife's conduct throughout the litigation, which includes her resistance to comply with orders of the court, and her continual changing of attorneys during the pendency of this litigation has unnecessarily increased the costs to both parties. The Husband's request for attorneys' fees from the wife is granted. This is because the wife has far superior resources to the husband. Also, the husband has been required to unnecessarily spend large sums of money on attorneys' fees and costs to enforce his rights to visitation and to obtain wife's compliance with orders of this Court. Pursuant to the Husband's pretrial stipulation (none was filed by the wife), the court

15

CD 99-9527 FY

will reserve jurisdiction to assess the amount of attorney's fees, separately after an evidentiary hearing is conducted. The Court finds that the husband has a need for and the wife has the ability to pay fees, costs and suit money.

Therefore based on the foregoing, it is

ORDERED AND ADJUDGED as follows:

2. <u>Jurisdiction</u>. The Court has jurisdiction over the subject matter and the parties. The Court has jurisdiction to determine custody of and visitation with the parties' minor children; to wit: Brandon Shulman, date of birth September 25, 1991 and Jennifer Shulman, date of birth August 10, 1998.

3. <u>Marriage dissolved</u>. The marriage between the parties is dissolved, and the parties are restored to the status of being single.

4. <u>Equitable Distribution</u>. The property of the parties is hereby distributed as completely described in paragraphs 3. 3a. 3b. 3c. 3d. 3e. 4, 5. and 6 in the findings of fact section of the judgment and the parties are ordered to comply with these provisions. The wife shall pay to the husband within 10 days of this order the sum of $200,214.00 to equalize the distribution pursuant to paragraph 5 of the findings of fact. The wife shall also pay to the husband an additional sum of $46,743.00 within 10 days of this order pursuant to paragraph 6 of the findings of fact.

5. <u>Money judgment</u>. The total amount due from Meryl Shulman, the wife herein, to Mark Shulman, the husband herein, is $246,957.00 that shall bear interest at the rate of 11% a year for which let execution issue.

6. <u>Parental Responsibility for the Minor Children</u>. The husband shall have sole

16

CD 99-9527 FY

parental responsibility for the parties' minor children.

7. Visitation with Minor Children. The wife shall have supervised visitation once per week with the minor children, such supervision to be conducted by the Family Connection at the Palm Beach County Courthouse at 205 North Dixie *or the Children's Place, in accordance* Highway, West Palm Beach, Florida 33401 ~~at the highest level of supervision~~ *with* ~~(Level III)~~. All costs of supervised visitation are to be paid by the wife. All *Paragraph 10, above.* visitations shall be conducted in the presence of the supervisor and conducted solely in English.

8. Limitations on Parental Responsibility, Visitation, and Time Sharing. The wife shall not take the children from the custody of the husband, or any child care provider or supervisor of visitation, or other person entrusted by the husband with the care of the children.

9. Communication Arrangements for Secondary Parenting, Visitation, and Time Sharing with Children. The wife may communicate with the minor children via letter or by supervised telephone calls with a mutually agreeable third party monitoring the calls. The wife shall pay all costs of monitoring.

10. Exchange of Minor Children. The exchange of the minor children shall be on time at the time and location where supervised visitation is to occur. The parties shall limit contact with each other to the minimum necessary to accomplish visitation. The parties shall not approach each other or their vehicles, during the time the children are dropped off at or picked up from the location of the supervised visitation.

11. Injunction Prohibiting Removing the Children. The Court hereby prohibits and

17

CD 99-9527 FY

enjoins the wife from permanently removing the minor children from any location where she is enjoying supervised visitation without a written court order.

12. <u>Child support</u>. The wife shall be obligated to pay child support to the husband in the amount of $893.00 per month retroactive to April 1, 2001, payable on the first day of each month thereafter and continuing until the youngest of the minor children reaches the age of 18 or until graduation from high school if the child reasonably expects to graduate from high school prior to the child's nineteenth birthday, whichever occurs last, or becomes emancipated, marries, dies, or otherwise becomes self-supporting.

13. <u>Payment through depository</u>. The wife shall pay court-ordered support directly together with any applicable service charge to the State of Florida Disbursement Unit, P.O. Box 8500, Tallahassee, Florida 32314-8500. Payment shall be by cash, money order, cashier's check, or certified check. Each payment shall include the Obligor's name and address, social security number, case number and Palm Beach County.

14. <u>Income deduction order</u>. The wife shall pay through income deduction pursuant to a separate Income Deduction Order which shall be effective immediately. The wife is individually responsible for paying this support obligation until all of said support is deducted from her income. Until support payments are deducted from her paycheck, the wife is responsible for making timely payments directly to the Central Governmental Depository as previously set forth in this order.

18

CD 99-9527 FY

15.   Insurance. The husband shall be required to maintain health and dental insurance coverage for the parties' minor children, so long as reasonably available.

16.   Uncovered medical, dental and prescription expenses. Reasonable and necessary uninsured or uncovered medical/dental/prescription drug costs for the minor children shall be shared equally by both parties. As to these uninsured medical/dental/prescription drug expenses, the party who incurs the expense shall submit request for reimbursement to the other party within 30 days, and the other party, within 30 days of receipt, shall submit the applicable reimbursement for that expense.

17.   IRS Income Tax Exemptions. The husband, as the party granted sole parental responsibility of the minor children shall have the benefit of any tax exemptions for the children.   Further, each party shall execute any and all IRS forms necessary to effectuate the provisions of this paragraph.

18.   Life Insurance. To secure the child support obligations in this judgment, the wife shall maintain life insurance coverage, in an amount of at least $250,000, on her life naming the minor children as the beneficiaries with the husband as Trustee for the minor children, so long as reasonably available. The obligation to maintain the life insurance coverage shall continue until the youngest child turns 18, becomes emancipated, marries, dies, or otherwise becomes self-supporting.

19.   Attorney's fees and costs. The wife's claim for attorney's fees and costs from the husband is denied. The husband's claim for attorney's fees and costs from the wife is granted. This court reserves jurisdiction to determine the amount of

19

CD 99-9527 FY

reasonable attorney's fees and costs to be paid by the wife at a separate

hearing and in a separate order.

20.   Former name. The wife's former name of Meryl Perlman is restored.

21.   Other provisions. Husband and Wife shall not harass, molest, or interfere with

each other's others right to conduct their lives separate and apart from each

other. This provision specifically includes a prohibition against the parties

making false or non-meritorious accusations against each other to law

enforcement or other governmental authorities nor shall either party permit

others to make such accusations on his or her behalf. Neither party shall

denigrate the other in the presence of the minor children nor shall they permit

third parties to do so. Willful failure to comply with this provision may be

punishable by contempt of court sanctions.

22.   All other relief requested, if not specifically addressed herein is denied.

23.   Reservation of jurisdiction. The Court reserves jurisdiction to modify and

enforce this Final Judgment, to determine and award attorney's fees and costs

as outlined above, to enforce or modify the provisions of equitable distribution

for the purposes of enforcement, and retains jurisdiction and enter all orders as

may be necessary to accomplish such.

DONE AND ORDERED in Chambers, at Delray Beach, Palm Beach County,

Florida, this _____ day of December, 2001 SIGNED AND DATED

DEC 12 2001

_____
Ronald V. Alvarez
JUDGE RONALD V. ALVAREZ
Circuit Court Judge

COPIES FURNISHED TO:

20

CD 99-9527 FY

Richard B. Barkin, Esq., 190 N.W. Spanish River Boulevard, #200, Boca Raton, Florida 33431

Craig A. Boudreau, Esq., 2315 South Congress Avenue, West Palm Beach, Florida 33406

Meryl Perlman Shulman, 5401 Collins Avenue, #135, Miami Beach, FL 33140

James L. Eisenberg, Esq., 250 Australian Avenue South, Suite 704, West Palm Beach, Florida 33401

4/10/2002 4:05 PM

Prudential
Securities

Prudential Securities Incorporated
625 Madison Ave, 10th Floor
New York, NY 10022-1887

No. 247007780

| Date | Office | Account Number | Type | | Pay |
| --- | --- | --- | --- | --- | --- |
| 08/10/01 | 7N | 304728 | 1 | | 52,912* | 42 |

CITIBANK DELAWARE
NEW CASTLE, DE 19720

Pay

To the order of:

MS. MERYL PERLMAN &
MS. MICHELLE PERLMAN JT TEN

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

⑆ Security Feature Included (Details on Back)

6550-746

⑆247007780⑆ ⑆031100209⑆

020297427 320

388332780

"0000529124242"

CDVolID/CIMSKey
200T081706T0001

Bank ID
31100020

Sequence
302647237

Account
38833278

Location
CD

Serial Number
247007780

Paid Date
08/15/2001

Amount
$52912.42

Page 1

ng Citibank Check Imaging Service

COMPOSITE EXHIBIT "B"

4/10/2002 4:05 PM

Meryl Paul

Dr. M. Paul

PAY TO THE ORDER OF
THE BANK OF NEW YORK
FOR CREDIT TO THE ACCOUNT OF
JANNEY MONTGOMERY SCOTT LLC
90-7006
Credited to the account of
the within named payee.
JANNEY MONTGOMERY SCOTT LLC

Amount
$529127.42

Serial Number
247007780

Paid Date
08/15/2001

Account
38833278

Location
CD

CDVolID/CIMSKey
20010817061001

Sequence
302547237

Bank ID
31T0020

ted using Citibank Check Imaging Service

6/7/2002 3:31 PM

Prudential
Securities

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

No. 171021077

VOID WITHOUT BLUE BACKGROUND AND GENUINE CHAINLINK WATERMARK

CITIBANK DELAWARE
NEW CASTLE, DE 19720

171021077

| Date | Office | Account Number | Type | Pay |
|---|---|---|---|---|
| 08/03/2001 | 07N | 310744 | 1 | ******2,500 00 |

BAX   07N

Pay

TWO THOUSAND FIVE HUNDRED DOLLARS AND 00 CENTS.

To the order of

MS. MERYL PERLMAN &
MS. MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON           FL 33429H6363  404.Q3 6300 A6

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

Security features included (Orders on Back)

⑈'171021077⑈'  ⑆:0311002091⑆:  38833278⑈'

,'0000250000,'

CDVolID/CIMSKey
20010824081000T

Bank ID
31110020

Sequence
608248851

Account
38833278

Location
CD

Serial Number
171021077

Paid Date
08/2072001

Amount
$2500.00

6/7/2002  3:31 PM

page 2

Meryl Kulman
Michelle Perlman

101 oc 2-20 18026

4655  2002

| CDVolID/CIMSKey | Sequence | Account | Serial Number | Amount |
| 20010E24051001 | 80E24B851 | 3B833278 | 17102I077 | $2500.00 |
| Bank ID | | Location | Paid Date | |
| 3110020 | | CD | 08/20/2001 | |

6/7/2002 3:34 PM

**Prudential**
Securities

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

No. 171021078

CITIBANK DELAWARE
NEW CASTLE, DE 19720

87-30
311

| Date | Office | Account Number | Type | Pay |
|------|--------|----------------|------|-----|
| 08/03/2001 | BAX | 07N | 310744 | 1 | 171021078 |

Pay

******2,550 | 00

TWO THOUSAND FIVE HUNDRED FIFTY DOLLARS AND 00 CENTS.

To the order of

⊕⊕0:315707  404  03  6519  6495

MS MERYL PERLMAN &
MS MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON        FL 33429-1636

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

🔒 Security Feature Included (Details on Back)

⑆"171021078⑆"  ⑈031100209⑇:  3883327⑈"  ⑆"0000255000⑆"

---

CDVoiID/CIMSKey
2001OB17061001

Bank ID
3110020

Sequence
207959929

Account
3883278

Location
CD

Serial Number
171021078

Paid Date
08/14/2001

Amount
$2550.00

6/7/2002  3:34 PM

Page 2

| | | |
|---|---|---|
| Account | Serial Number | Amount |
| 38833278 | 17102107/8 | $2550.00 |
| Location | Paid Date | |
| CD | 08/14/2001 | |

| | |
|---|---|
| CDVoiID/CIMSKey | Sequence |
| 2001081706100/1 | 207959929 |
| Bank ID | |
| 3110020 | |

6/7/2002 3:35 PM

Page 1

**Prudential Securities**

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

No. **171021079**

| Date | Office | Account Number | Type | Pay |
|---|---|---|---|---|
| 08/03/2001 | 07N | 310744 | 1 | ******2,600 |00 |

BAX                                     17 1021079

CITIBANK DELAWARE
NEW CASTLE, DE 19720

Pay

TWO THOUSAND SIX HUNDRED DOLLARS AND 00 CENTS.

0103 15709  404  03  6519  6495

To the order of

MS MERYL PERLMAN &
MS MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON        FL 33429-1636

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

🔒 Security feature included (Details on Back)

"171021079"  ":031 1100 209":  388332276"

'0000 260000,'

CDVolID/CIMSKey
200T0B1770610D1

Account
38833278

Serial Number
171021079

Amount
$2600.00

Bank ID
3110020

Location
CD

Paid Date
08/14/2001

Sequence
207959931

6/7/2002 3:35 PM

*Meryl Perlman*
*Michelle Perlman*

FIRST UNION NAT. BANK
OAKLAND FL

**Amount**
$2600.00

**Serial Number**
171027079

**Paid Date**
08/14/2001

**Account**
38833278

**Location**
CD

**CDVolID/CIMSKey**
2001081705I001

**Sequence**
207959931

**Bank ID**
3170020

Page 2

Printed using Citibank Check Imaging Service

6/7/2002  3:38 PM

**Prudential Securities**

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

VOID WITHOUT BLUE BACKGROUND AND GENUINE CHARTER WATERMARK

No. 171021080   CITIBANK DELAWARE
NEW CASTLE, DE 19720

171021080

| Date | Office | Account Number | Type | Pay |
|------|--------|--------|------|-----|
| 08/03/2001 | BAX | 07N | 310744 | 1 | ******2,650 | 00 |

Pay

TWO THOUSAND SIX HUNDRED FIFTY DOLLARS AND 00 CENTS.

To the order of

MS MERYL PERLMAN &
MS MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON          FL 33429-1636

Property features included (Details on Back)

Authorized Signature

⑈171021080⑈ ⑈031100209⑈ 38833278⑈       ⑈0000265000⑈

CDVoidID/CIMSKey
2001090708390T

Bank ID
31100020

Sequence
602002542

| Account | 38833278 |
|---------|----------|
| Location | CD |

| Serial Number | 171021080 |
|---------------|-----------|
| Paid Date | 09/05/2001 |

| Amount | $2650.00 |
|--------|----------|

6/7/2002  3:38 PM

Page 2

*Meryl Perlman*

*Michelle Perlman*

PAY TO THE ORDER OF
COMMERCIAL BANK OF FLORIDA
MIAMI, FL 3. 156-0000
066010377
FOR DEPOSIT ONLY
JOHN LIPINSKI ESQUIRE, CORP.
9071001476

PAID
09-05-01

CDVoidID/CIMSKey
2001090708390T

Bank ID
3110020

Sequence
602002542

Account
38833278

Location
CD

Serial Number
171021080

Paid Date
09/05/2001

Amount
$2650.00

Printed using Citibank Check Imaging Service

6/7/2002 3:32 PM

**Prudential Securities**

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

No. **1710021081**

CITIBANK DELAWARE
NEW CASTLE, DE 19720

| Date | Office | Account Number | Type | Pay |
|------|--------|----------------|------|-----|
| 08/03/2001 | 07N | 310744 | 1 | ******2,700 00 |

Pay ___ 1710021081

TWO THOUSAND SEVEN HUNDRED DOLLARS AND 00 CENTS.

BAX

To the order of

MS MERYL PERLMAN &
MS MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON          FL 33429-1636

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

Security Features Included (Details on Back)

⑆1710021081⑆ ⑈031100209⑉ 386332278⑆

060207841 404 03 6929 5524

'0000270000'

Serial Number
1710021081

Paid Date
08/23/2001

Amount
$2700.00

Account
38833278

Location
CD

CDVoiID/CIMSKey
200T08240511001

Bank ID
31T0020

Sequence
608869837

Page 1

Printed using Citibank Check Imaging Service

6/7/2002 3:32 PM



0533   05760

#0 22 01

Amount
$2700.00

Serial Number
171021081

Paid Date
08/23/2001

Account
38833278

Location
CD

CDVoidID/CIMSKey
20010824051001T

Bank ID
31T0020

Sequence
608869837

6/7/2002 3:33 PM

Page 1

**Prudential Securities**

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

VOID WITHOUT BLUE BACKGROUND AND GENUINE CHANLINK WATERMARK

No. 171021082

CITIBANK DELAWARE
NEW CASTLE, DE 19720

| Date | | Office | Account Number | Type | Pay |
|------|--|--------|---------|------|-----|
| 08/03/2001 | BAX | 07N | 310744 | 1 | *******2,750 00 |

TWO THOUSAND SEVEN HUNDRED FIFTY DOLLARS AND 00 CENTS.

To the order of

MS. MERYL PERLMAN &
MS. MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON            FL 33429-1636

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

⑆ Security Feature Included (Details on Back)

⑈171021082⑈  ⑆031100209⑈   404 03 6300 0 301     ⑈88332278⑈

⑆0000275000⑈

---

CDVolIDiCIMSKey
2001082406100T

Bank ID
3110020

Sequence
608249123

Account
38833278

Location
CD

Serial Number
171021082

Paid Date
08/20/2001

Amount
$2750.00

6/7/2002  3:33 PM

4655        1 8 7 2 9

Meryl Perlman
Michelle Perlman

620001
PAID
0311-0828-4
00002740123

►063107513◄
FIRST UNION NAT'L BANK 041
MIAMI, FL    08/12/2001
002740000275040

**CDVolID/CIMSKey**
2001082405100T

**Bank ID**
31T0020

**Sequence**
808249123

**Account**
38833278

**Location**
CD

**Serial Number**
1710271082

**Paid Date**
08/20/2001

**Amount**
$2750.00

Page 2

Printed using Citibank Check Imaging Service

6/1/2002 3:42 PM

**Prudential** Securities

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

No. 171021083

CITIBANK DELAWARE
NEW CASTLE, DE 19720

Pay

Date
08/03/2001

BAX

Office
07N

Account Number
310744

171021083
Type Pay
1    ******2,800 00

TWO THOUSAND EIGHT HUNDRED DOLLARS AND 00 CENTS.

07 0315708   404   03   6519   6495

To the order of

MS MERYL PERLMAN &
MS MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON          FL 33429-1636

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

⚫ Security Features Included (Details on Back)

⑆171021083⑆  ⑈031100209⑈  388332278⑆  ⑆0000280000⑆"

Serial Number
171021083

Amount
$2800.00

Paid Date
08/14/2001

CDVolID/CIMSKey
20010817061001

Account
388332278

Sequence
207859930

Bank ID
3110020

Location
CD

Printed using Citibank Check Imaging Service

6/7/2002 3:42 PM

*Michelle Palman* (signature)

| | | |
|---|---|---|
| **Sequence**<br>207959930 | **Account**<br>38833278 | **Serial Number**<br>171027083 |
| | **Location**<br>CD | **Paid Date**<br>08/14/2001 |
| **CDVolID/CIMSKey**<br>200108177067100T | | **Amount**<br>$2800.00 |
| **Bank ID**<br>31T0020 | | |

6/7/2002 3:40 PM

**Prudential Securities**

Prudential Securities Incorporated
200 South Biscayne Blvd., Suite 3200
Miami, FL 33131

No. **171021084**

CITIBANK DELAWARE
NEW CASTLE, DE 19720

Pay

| Date | Office | Account Number | Type | Pay |
|------|--------|----------------|------|-----|
| 08/03/2001 | BAX | 07N | 310744 | x | ******2,850 | 00 |

171021084

TWO THOUSAND EIGHT HUNDRED FIFTY DOLLARS AND 00 CENTS.

To the order of

MS MERYL PERLMAN (00024582 3142 3145 01 1752704 Y) IN 90 DAYS
MS MICHELLE PERLMAN JT TEN
PO BOX 1636
BOCA RATON          FL 33429-1636 *07571 404 03 664

Authorized Signature

Security Features Included (Details on Back)

⑆171021084⑆ ⑈031100209⑇ 38833270⑆          ⑈0000 28 5000⑈

| | | |
|---|---|---|
| **Account** 38833278 | **Serial Number** 171021084 | **Amount** $2850.00 |
| **Location** CD | **Paid Date** 10/03/2001 | |

CDVoidID/CIMSKey
20011005110801

Sequence
301146858

BankID
31T0020



6/1/2002 3:40 PM

PAY TO THE ORDER OF
COMMERCIAL BANK OF FLORIDA
MIAMI FL 33156-0000
066010377
FOR DEPOSIT ONLY
JOHN LIPINSKI ESQUIRE, CORP.
9071001476

**CDVoidID/CIMSKey**
2001T005110601

**Bank ID**
31T0020

**Sequence**
30174685R

**Account**
38833278

**Location**
CD

**Serial Number**
1710210B4

**Paid Date**
10/03/2001

**Amount**
$2850.00

Printed using Citibank Check Imaging Service

No. 072162834

Bankers Trust Company
16 Wall Street
New York, New York 10005

Prudential Securities Incorporated
250 Park Avenue 7th Floor
New York, NY 10177

Date | AUGUST 8, 2001

Office | 7N-310744   Account Number   Type | 1   Pay | $164,000.00

PAY EXACTLY 164 000 DOLLARS

To the order of
MERYL PERLMAN
MICHELLE PERLMAN

Authorized Signature

"072162834" "021001033" 001"0081095L"

THIS IS WATERMARKED PAPER AND CONTAINS VISIBLE
FLUORESCENT FIBERS. DO NOT ACCEPT CHECK w/THIS
WATERMARK. HOLD TO LIGHT TO VERIFY WATERMARK.
ENDORSEMENT WITH A FELT TIPPED PEN IS RECOMMENDED.

Dr. Michelle D. Perlman

Meryl Perlman

PAY TO THE ORDER OF
THE BANK OF NEW YORK
FOR DEPOSIT TO THE ACCOUNT OF
JANNEY MONTGOMERY SCOTT LLC
90-7006
Credited to the account of
the within named payee.
JANNEY MONTGOMERY SCOTT LLC

021001033
BTCO   08/09/01
PROCESSED

6/7/2002 3:37 PM

**Prudential Securities**

Prudential Securities Incorporated
625 Madison Ave, 10th Floor
New York, NY 10022-1887

No. 247007779

CITIBANK DELAWARE
NEW CASTLE, DE 19720

| Office | Account Number | Type | | Pay |
|--------|---------|------|---|-----|
| 7N | 310744 | 1 | 68,995* | 07 |

Date 08/10/01

Pay

To the order of

MS MERYL PERLMAN &
MS MICHELLE, PERLMAN JT TEN

PLEASE CASH WITHIN 90 DAYS

Authorized Signature

⑇ Security Features Included. Details on Back.

⑈"247007779⑈  ⑇031100209⑇:  388332278"

"000689950 2⑈"

Page 1

CDVoidID/CIMSKey
200108170610017

Account
388332278

Serial Number
247007779

Amount
$68995.02

Bank ID
31100020

Sequence
302547238

Location
CD

Paid Date
08/15/2001

Printed using Citibank Check Imaging Service

6/7/2002 3:37 PM

Page 2



PAY TO THE ORDER OF
THE BANK OF NEW YORK
FOR THE ACCOUNT OF
JANNEY MONTGOMERY SCOTT LLC
50-7006
Credited to the account of
the within named payee
JANNEY MONTGOMERY SCOTT LLC

**CDVollD/CIMSKey**
200108170610001

**Bank ID**
3110020

**Sequence**
302547238

**Account**
38833278

**Location**
CD

**Serial Number**
247000779

**Paid Date**
08/15/2001

**Amount**
$68995.02

** TOTAL PAGE.22 **



COMPOSITE "C"





COMPOSITE "C"



JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

03 - 80386

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

MARK HOWARD Shulman

**DEFENDANTS**

*Michelle Deborah Perlman
*Meryl Hope Perlman, a.k.a
Meryl Shulman

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Palm beach
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT New York
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Craig A. Boudreau

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
2315 S. Congress Avenue
West Palm Beach, FL 33406

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | A☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | A☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

18 U.S.C.A. § 1961, 1962 et seq. Both defendants are enjoying investments of RICO Enterprise. Defendants committed at least 2 predicate acts forming a pattern of conduct in furtherance of a single objective to defraud

LENGTH OF TRIAL via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $ #244,957 @ treble damages, att's fees, cost + interest.

JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) (See instructions)
IF ANY

JUDGE ___ DOCKET NUMBER ___

DATE ___

SIGNATURE OF ATTORNEY OF RECORD ___

**FOR OFFICE USE ONLY**

RECEIPT # 712277   AMOUNT $150.00   APPLYING IFP ___   JUDGE Hurley   MAG. JUDGE Lynch G

JS 44 Reverse
(Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.   (a) Plaintiffs – Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P. which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below, federal question actions take precedence over diversity cases.)

**III.   Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**V.   Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.